LABARGA, J.,
dissenting.
I dissent from the holding of the majority that application of the statutory bright-line cutoff score of a full scale IQ of 70 for determining mental retardation as a bar to execution comports with the Supreme Court’s decision in Atkins v. Virginia, 536 U.S. 304, 317, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), under the facts and circumstances of this case. I write to express my deep concern with the fact that even though Hall was found to be retarded long before the Supreme Court decided Atkins, and even though evidence was presented below that he remains retarded, we are unable to give effect to the mandate of Atkins under the definition of “mental retardation” set forth in section 921.137(1), Florida Statutes (2012). In 1993, on appeal from Hall’s resentencing, Justice Barkett, joined by Justice Kogan, pointed out in her dissent that the trial judge in this case found that Hall “has been mentally retarded all of his life.” Hall VII, 614 So.2d at 479 (Barkett, C.J., dissenting). At that time, mental retardation was not an absolute bar to execution, but was considered generally in mitigation. Subsequently, on postconviction appeal in 1999, Hall’s claim that execution of mentally retarded persons violated the United States Constitution was found to be proeedurally barred. See Hall VIII, 742 So.2d at 226. In his special concurrence in Hall VIII, Justice Anstead, joined by Justice Par-iente, expressed the view that execution of mentally retarded persons such as Hall violated the Florida Constitution. Id. at *716 280-31 (Anstead, J., specially concurring). In 2001, Hall again attempted to obtain relief on his claim that he may not constitutionally be executed because he is mentally retarded. This Court denied relief, noting that the trial court had followed Penry v. Lynaugh, 492 U.S. 802, 340, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in which the Supreme Court had held there is no constitutional bar to prevent execution of the mentally retarded. See Hall v. Moore, 792 So.2d 447, 449 (Fla.2001). One year later, the United States Supreme Court overruled Penry in Atkins and held that execution of the mentally retarded violates the constitutional prohibition against cruel and unusual punishment. Atkins, 536 U.S. at 321, 122 S.Ct. 2242. Thus, ever since the trial court found him to be retarded, Hall has urged this Court to hold that, because he is mentally retarded, he may not be executed. But for the vagary of the timing of the trial court’s conclusion in relation to the timing of the Supreme Court’s decision in Atkins, Hall would not be on death row today.
The situation present in Florida, in which the Legislature has established a bright-line cutoff score that this Court has upheld, now creates a significant risk that a defendant who has once been found to be mentally retarded may still be executed. I believe this result is not in accord with the rationale underlying the constitutional bar to execution of the mentally retarded, which the United States Supreme Court set forth in Atkins. A state’s procedural safeguards must protect against an erroneous conclusion that the offender is not mentally retarded. In order to meet constitutional muster, I believe that Florida’s statutory and rule provisions, which were put into place with the laudable goal of assuring that mentally retarded individuals are not executed, must be crafted — or at a minimum construed — so as to avoid the unwarranted risk of an erroneous mental retardation determination that would allow those who are mentally retarded to be executed.
In its 2005 holding that the Constitution prohibits execution of defendants who were under the age of eighteen at the time of the murder, the Supreme Court in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), explained:
The Atkins Court neither repeated nor relied upon the statement in Stanford[8] that the Court’s independent judgment has no bearing on the acceptability of a particular punishment under the Eighth Amendment. Instead we returned to the rule, established in decisions predating Stanford, that ‘“the Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the death penalty under the Eighth Amendment.’” 536 U.S., at 312 [122 S.Ct. 2242] (quoting Coker v. Georgia, 433 U.S. 584, 597, 97 S.Ct. 2861 [53 L.Ed.2d 982] (1977) (plurality opinion)). Mental retardation, the Court said, diminishes personal culpability even if the offender can distinguish right from wrong. 536 U.S., at 318 [122 S.Ct. 2242], The impairments of mentally retarded offenders make it less defensible to impose the death penalty as retribution for past crimes and less likely that the death penalty will have a real deterrent effect. Id., at 319-320 [122 S.Ct. 2242], Based on these considerations and on the finding of national consensus against executing the mentally retarded, the Court ruled that the death penalty constitutes an excessive sanction for the entire category of mentally retarded offenders, and that the Eighth Amendment “ ‘places a *717 substantive restriction on the State’s power to take the life’ of a mentally retarded offender.” Id., at 321 [122 S.Ct. 2242] (quoting Ford v. Wainwright, 477 U.S. 399, 405 [106 S.Ct. 2595, 91 L.Ed.2d 335] (1986)).
Roper, 543 U.S. at 563-64, 125 S.Ct. 1183 (emphasis added). Similarly, I urge this Court to bring its own judgment to bear on the question of the constitutional acceptability of the execution of persons who, under all the facts and data reasonably relied upon by mental health experts, have been determined to be mentally retarded when the execution is permitted solely by the Legislature’s inflexible definition of mental retardation. The Court in Roper reminds us that the prohibition against cruel and unusual punishment in the Eighth Amendment must be interpreted in part “with due regard for its purpose and function in the constitutional design.” Id. at 560, 125 S.Ct. 1183. “To implement this framework we have established the propriety and affirmed the necessity of referring to ‘the evolving standards of decency that mark the progress of a maturing society’ to determine which punishments are so disproportionate as to be cruel and unusual.” Id. at 560-61, 125 S.Ct. 1183. The Supreme Court noted that when it decided Atkins, “[w]e held that standards of decency have evolved since Penry and now demonstrate that execution of the mentally retarded is cruel and unusual punishment.” Roper, 543 U.S. at 563, 125 S.Ct. 1183. The difficulty has been in finding a reliable way in which to determine which capital defendants fall into this class of persons for whom execution is barred.
The Atkins Court noted that the accepted definitions for mental retardation refer in pertinent part to “significantly subaver-age intellectual functioning.” Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. 2242. That Court did not prescribe any specific IQ score as a bright-line cutoff, although the Court noted that “mild” mental retardation is typically used to describe people with an IQ level range of 50 to 70. Id. However, this typical description was not given as a mandated cutoff score, and the Court later noted that “[t]o the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded.” Id. at 317, 122 S.Ct. 2242. This prediction certainly proved prescient in Florida, as Florida courts have continued to struggle with evaluation of the claims of mental retardation raised by capital defendants. I recognize that it is because of this very difficulty in determining which offenders are in fact mentally retarded that the Supreme Court left “to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.” Id. (quoting Ford v. Wainwright, 477 U.S. 399, 416-17, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)). We must focus, however, on the Supreme Court’s mandate that the ways developed by the States must actually be “appropriate” to enforce the restriction. In my view, the imposition of an inflexible bright-line cutoff score of 70, even if recognized as often describing the upper range of mild mental retardation, is not in every case an appropriate way to enforce the restriction on execution of the mentally retarded. This is true where, as here, ample evidence has been presented that the defendant has been mentally retarded from an early age despite the achievement of an IQ score over 70 on IQ testing. The Supreme Court barred execution of mentally retarded individuals based in part on the evolving standards of decency in our maturing society, and those standards should include thoughtful consideration of all the factors that mental health professionals consider in determining whether an individual is mentally retarded, without ap *718 plication of an inflexible, oftentimes arbitrary, bright-line cutoff IQ score.
In 2010, the United States Supreme Court decided Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), in which it held that sentencing juvenile offenders to life in prison without the possibility of parole for non-homicide offenses violates the Cruel and Unusual Punishment clause of the United States Constitution. Id. at 2034. In explaining its decision, the Court noted that in Atkins it barred execution of offenders “whose intellectual functioning is in a low range.” Id. at 2022. Hall certainly meets that standard and has met that standard for his entire life.
The United States Supreme Court has not been unwilling to recede from or overrule its precedent when it concludes that execution of certain classes of persons violates the Eighth Amendment. Nor should this Court be unwilling to do the same. Where, as here, the evidence has long established that a defendant is functionally mentally retarded, I believe there is a justifiable concern of constitutional magnitude in putting such a defendant to death. That same concern should lead this Court to revisit its precedent that has heretofore bound this Court to the inflexible test set forth by the Legislature for identification of mentally retarded persons who are not constitutionally subject to execution. For all the foregoing reasons, I also encourage the Legislature to reexamine its definition of mental retardation set forth in section 921.137(4), in light of the principles set forth in the United States Supreme Court’s decision in Atkins.
PERRY, J., concurs.

. Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).